IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES ISIAH MACON, AIS # 335089, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIV. ACTION NO. 25-00471-JB-MU |
| | ) | |
| WARDEN MCKENZIE, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff James Isiah Macon, an inmate proceeding without the assistance of an attorney (*pro se*), filed this § 1983 action on or about August 19, 2025, in the Northern District of Alabama. (Doc. 1). After the action was transferred to this Court, it was referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(b). (Docs. 6, 7, and Docket Sheet). After reviewing his initial complaint, the Court notified Macon of the deficiencies in it, provided instruction on how to cure the deficiencies, and ordered him to amend his complaint. (Doc. 8). Thereafter, Macon filed an amended complaint, which is now before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B). (Doc. 9). Upon review of the amended complaint, which is now the operative complaint, the undersigned finds that Plaintiff's amended complaint is due to be **DISMISSED without prejudice** prior to service pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for the reasons set forth below.

## I. <u>Standard of Review</u>

Pursuant to 28 U.S.C. § 1915, the Court must review the plaintiff's complaint to identify cognizable claims and to dismiss the complaint, or any portion of the complaint, "if the complaint - - (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b)(1), (2); *see also* § 1915(e)(2)(B)(i-iii). Dismissal for these reasons is mandatory rather than discretionary. *See* § 1915A(b) ("On review, the court shall identify cognizable claims or dismiss the complaint...."); § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that" the claims are frivolous or fail to state a claim.).

A claim is frivolous "when it appears the plaintiff has 'little or no chance of success.'" *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam) (citation omitted). A court may conclude a claim has little or no chance of success when the claim is "based on an indisputably meritless legal theory," when its "factual contentions are clearly baseless," or when the defendant is immune from suit. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

A complaint may be dismissed for failure to state a claim upon which relief may be granted when it fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (internal quotation marks omitted). This means a complaint must have sufficient factual allegations that "raise a right to relief above a speculative level" and the allegations must "show that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555, 557 (2007). “Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.” *Iqbal*, 556 U.S. at 678.

In reviewing the complaint, the court must liberally construe a *pro se* plaintiff’s allegations, holding them to a more lenient standard than those drafted by an attorney. *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998). Furthermore, a court “accepts the complaint’s factual allegations as true,” *Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021), but does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 556 U.S. at 681. In addition, a *pro se* litigant “is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.” *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## II. Summary of Plaintiff’s Allegations

Plaintiff asserts various allegations related to the conditions of his confinement and/or treatment at G.K. Fountain Correctional Facility (“Fountain”). First, he alleges he was denied blood pressure medication for approximately a month upon arriving at the facility and only began receiving medication after his loved ones made phone calls to address the issue. (Doc. 9, PageID. 10). Second, he alleges that on May 29, 2025, he was attacked coming out of the dining hall at Fountain. (*Id*.). He asserts Officer Kemp and four other unnamed officers did not stop the attack but allowed him to be stabbed in the head 10 times before yelling “break it up.” (*Id*.). Third, he claims he was kicked out of his assigned dorm on June 11, 2025. (*Id*., PageID. 15). When he told Captain Tololiver about it, Captain Tololiver instructed him to “tell another inmate named Fat Mack to let him come into the cell.” (*Id*.). (cleaned up). However, the inmates would not allow him to return to his assigned dorm, so Macon slept in the main hallway overnight. (*Id*.). The next day, Macon spoke to Mental Health Counselor Murphy who initially did

not take action to help Macon, but after Macon told Counselor Murphy he "wanted to kill himself," Macon was placed in a crisis cell until June 17, 2025, when he was moved to the restrictive housing unit by Lt. Ming. (*Id.*) (cleaned up). He further claims that every time Counselor Murphy walks past his restrictive housing cell, Counselor Murphy harasses him about being "ready to go back down the hallway," knowing that Macon is "not going back to population." (*Id.*, PageID.16). Fourth, he claims that on or around October 3, 2025, his tablet was stolen after he gave it to Officer Adams to be charged and, despite complaining to Captain Fountain, Warden McKenzie, Officer Dailey and the inmate tablet runner, he has not had his tablet returned. (*Id.*).

Macon is suing Warden Brandon McKenzie for failing to get him back into his dorm after inmates kicked him out, for being stabbed, and for the delay in receiving medication. He is suing YesCare for failing to provide his blood pressure medication for a month. He is suing Mental Health Counselor Murphy for harassing him about going back to general population. Macon requests monetary relief and that the camera footage from the May 29, 2025 incident be reviewed and that the associated officers and Warden be questioned. (*Id.*, PageID.14).

**III. <u>Legal Analysis</u>**

Read liberally, Macon challenges that Defendants Warden McKenzie, YesCare, and Counselor Murphy acted with deliberate indifference to his health and safety, in violation of the Eighth Amendment. He also claims that Counselor Murphy is harassing him and that no one will help him get his tablet back. Taking Macon's allegations as true, as the Court must at this stage of the proceedings, the Court finds that he has failed to state a claim under § 1983 upon which relief may be granted. *Duty Free Ams., Inc. v.*

*Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1262 (11th Cir. 2015) (At the initial stage of a case, the Court must "accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.").

**A. Supervisory Liability**

As previously explained in the order to amend (Doc. 8), to hold a defendant liable under § 1983, a defendant must have personally participated in the unconstitutional conduct or be causally connected to it. *See Harrison v. Culliver*, 746 F.3d 1288, 1298-99 (11th Cir. 2014). "[T]he standard by which a supervisor is held liable in [his or] her individual capacity for the actions of a subordinate is extremely rigorous." *Christmas v. Harris Cnty, Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quotation omitted). There is no "vicarious liability, including respondeat superior, in § 1983 actions." *Goebert v. Lee Cnty*, 510 F.3d 1312, 1331 (11th Cir. 2007). Thus, a defendant "may not be sued under Section 1983 for the acts of others but, rather, only for its own acts." *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1056 (S.D. Ala. 2007), *aff'd*, 261 F. App'x 182 (11th Cir. 2008). Accordingly, a plaintiff asserting a claim under 42 U.S.C. § 1983 must show a causal connection between each defendant's actions, orders, customs, or policies and the alleged violation of the plaintiff's rights. *Zatler v. Wainwright*, 802 F.2d 397, 401(11th Cir. 1986). A casual connection may be established if:

> (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Myrick v. Fulton Cnty, Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quotation omitted).

Because Macon fails to make a direct allegation of wrongdoing against Warden McKenzie or YesCare, he must show that an official policy or custom put in place by one (or both) of them was the "moving force" behind his alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693-94 (1978). A custom is "a practice that is so settled and permanent that it takes on the force of the law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (quotation omitted). "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Id.* (quotation omitted); *see also Craig v. Floyd Cnty, Ga.,* 643 F.3d 1306, 1311 (11th Cir. 2011) (stating that proof of a single incident of unconstitutional activity is insufficient to show a policy or custom under § 1983 even when the incident involved several employees of the defendant). Macon has failed to put forth any allegations to show a persistent, widespread practice demonstrating that the officers or medical staff at Fountain had a policy or custom, put in place by Warden McKenzie or YesCare, to deny medications, fail to protect prisoners from inmate attacks, fail to appropriately house prisoners, or violate the constitutional rights of inmates. *McDowell*, 392 F.3d at 1290. Instead, Macon makes vague, conclusory allegations supported solely by his personal experience regarding the denial of blood pressure medication (by unknown or unnamed medical staff), an inmate attack on May 29, 2025, and being kicked out of his dorm on June 12, 2025. These isolated incidents are insufficient to establish liability against Warden McKenzie or YesCare for the actions of others under § 1983. *See Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th

Cir. 1986) ("[R]andom acts or isolated incidents are insufficient to establish a custom or policy.").

Moreover, there can be no supervisory liability when there is no underlying constitutional violation. *Stalley v. Cumbie,* 124 F.4th 1273, 1288 (11th Cir. 2024) ("[U]nder our precedent, plaintiffs cannot maintain a supervisory liability claim tied to an alleged underlying constitutional violation if it is determined that no such violation occurred). Here, as discussed below, the facts alleged by Macon are insufficient to state a constitutional violation as to any person or any claim. Consequently, he has not plausibly stated a supervisory claim against Warden McKenzie and/or YesCare, and the claims against them are due to be dismissed under 28 U.S.C. §1915(e)(2)(B)(ii).

**B. Deliberate Indifference to Health and Safety**

Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). A constitutional violation occurs when an official acts with deliberate indifference to a known danger, an objectively serious injury or medical need, or a substantially serious risk of harm to an inmate. *Id*. at 834. "To establish a § 1983 claim for deliberate indifference, a plaintiff must show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden III (Marbury III)*, 180 F.4th 1349, 1356 (11th Cir. 2026) (internal quotation marks and citation omitted).

The first element — a substantial risk of serious harm — is measured against an objective standard. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir.

2014). Under this standard, the alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam).

The second element — the prison official's deliberate indifference to the risk — "has both a subjective and an objective component." *Marbury v. Warden (Marbury I)*, 936 F.3d 1227, 1233 (11th Cir. 2019). "To satisfy the subjective component, a plaintiff must produce evidence that the defendant 'actually (subjectively) knew that an inmate faced a substantial risk of serious harm.'" *Caldwell*, 748 F.3d at 1099 (citation and alterations omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. To meet the objective component, a plaintiff must produce evidence that the defendant disregarded the known substantial risk by failing to respond to it in an objectively reasonable manner. *Caldwell*, 748 F.3d at 1099. "The known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a [prison official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983[.]" *Id.* Where more than one defendant is alleged to have been deliberately indifferent, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

The third element — causation — requires a plaintiff to demonstrate a link between a defendant's act or omission and the excessive risk of harm, and a link

between the risk of harm and the plaintiff's injury. *LaMarca v. Turner*, 995 F.2d 1526, 1538-39 (11th Cir. 1993).

Here, Plaintiff's allegations are insufficient to show that any defendant was deliberately indifferent to a serious risk to his health or safety. First, it cannot be said that denial of blood pressure medication in this instance rises to a constitutional violation. While high blood pressure can indicate a serious medical need, the complaint is void of facts showing Macon was at a substantial risk of serious harm from his high blood pressure, that defendants were aware of such risk of harm, and with that knowledge, failed to reasonably respond to the risk. Indeed, Macon has provided no allegations that he suffered any symptom or negative effect to his health from the delay in receiving his blood pressure medication. Accordingly, Macon has failed to show that his high blood pressure was "sufficiently serious," such that denial of medication rises to a constitutional level. *Denison v. Corr. Health Partners*, No. 13-CV-01584-PAB-MEH, 2014 WL 1673126, at *11 (D. Colo. Apr. 28, 2014) (because the plaintiff alleged "no other medical conditions arising or resulting from his high blood pressure that might prove 'sufficiently serious,'" the court found that plaintiff failed to allege constitutional claim). Stated another way, no allegations demonstrate that Macon was at risk of injury or complications from temporarily missing the medication. He does not plead that he exhibited obvious symptoms of distress that were ignored. Nor does he allege to have suffered any harm from missing his blood pressure medication. Consequently, there can be no constitutional violation for the failure to provide Macon his blood pressure medication for approximately one month.

Conversely, the stabbing described in the complaint does establish an objectively serious risk of harm. However, Macon fails to plead facts showing or even suggesting that any officer, much less any named defendant, was deliberately indifferent to the risk. Nothing in the complaint indicates that any defendant, officer, or even Macon was aware that he faced a substantial risk of serious harm before he was attacked on May 29, 2025 – the complaint lacks allegations of threats made or claims that Macon feared for his safety prior to the attack. Nor has Macon shown that any defendant (or unnamed officer) was in a position to intervene in the attack – the complaint lacks factual allegations describing how the attack occurred; how many inmates were involved; how long the attack lasted; how close the officers were to the attack, etc. Because the complaint lacks allegations establishing that any officer could have immediately stopped the attack, it cannot plausibly be inferred that the officers waited an unreasonable amount of time to intervene. *Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (“[W]ithout allegations describing the duration of the fight or the defendants' response, it is impossible to determine whether any defendant was subjectively aware of the risk of injury or whether any defendant responded to the risk of injury in an objectively unreasonable manner.”). Accordingly, the complaint fails to rise above a “speculative level” with respect to the necessary elements to state a deliberate indifference claim, and the claim is due to be dismissed.

Likewise, Plaintiff’s allegations fall short of establishing that he faced an objectively serious risk to his health or safety when he was forced out of his assigned dorm and spent one night in the hallway. *See Farmer*, 511 U.S. at 828 (It is only a “prison official's ‘deliberate indifference’ to a substantial risk of serious harm to an

inmate" that violates the Constitution.). For a condition to rise to a constitutional level, it must be "extreme" and "violate[] contemporary standards of decency." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575-76 (11th. Cir. 1985) (having to sleep on the floor or a table fails to state an Eighth Amendment claim). Temporary deprivations fall short of satisfying this objective test. *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (collecting cases); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1998) (finding no constitutional violation where prison officials failed to provide an inmate with toilet paper for five days and with soap, a toothbrush, and toothpaste for ten days). Additionally, the complaint allegations reflect that upon asking nondefendant officers for help, he was not ignored. Specifically, Counselor Murphy placed Macon in a crisis cell based on Macon's statements of suicidal ideation. Macon was then moved to the restrictive housing unit. Macon does not allege that he is not safe in the restrictive housing unit or that he is being housed in inhumane or unconstitutional conditions. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause ..." does not provide a right to be incarcerated in a particular prison or held in a specific security classification or section of the prison. *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *see also West v. Higgins*, 346 F. App'x 423, 426 (11th Cir. 2009) ("An inmate has no liberty interest in a particular classification, prison assignment, or transfer even if the inmate loses access to rehabilitative programs and experiences more burdensome conditions than before.") (citations omitted). Also, and importantly, Macon has not alleged any actual harm from his housing situation. Accordingly, Macon has failed to

state a claim upon which relief may be granted and his claims related to being kicked out of his dorm, spending a night in the hallway, and later being held in a crisis cell and the restrictive housing unit are due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

C. **Harassment**

Macon broadly claims that he is being harassed by Counselor Murphy about returning to general population. While Counselor Murphy's questions and comments may feel callous or taunting, it is well established that verbal abuse alone, no matter how unprofessional or offensive, is insufficient to state a constitutional claim. *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (threats and verbal abuse do not rise to the level of a constitutional violation); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional rights). While the sarcastic comments directed at Macon may be inconsiderate and inappropriate, the comments (without unconstitutional actions) do not rise to the level of a constitutional violation. *See Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("an inmate being subjected to nothing more than threats and verbal taunts does not violate the Eighth Amendment"). For this reason, Macon's allegations against Counselor Macon regarding his repeated questions about Macon's return to general population fall short of establishing a constitutional claim and are due to be dismissed under 28 U.S.C. § 1983.

**C. <u>Loss of Property</u>**

The Fourteenth Amendment protects against deprivations of life, liberty, or property by a State without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330 (1986). Macon's allegations that his tablet was never returned or was stolen after being given to Officer Adams for charging implicates the Fourteenth Amendment. *Holt v. Givens*, 757 F. App'x 915, 921 (11th Cir. 2018). However, "[n]othing in [the Fourteenth Amendment] protects against all deprivations of life, liberty, or property by the State. [It] protects only against deprivations without due process of law." *Parratt*, 451 U.S. at 537 (quotation marks omitted).

A deprivation of property that is the result of a state employee's lack of due care or negligence does not violate the Fourteenth Amendment. *Daniels*, 474 U.S. at 333. Indeed, even "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).

Macon's allegations suggest that the loss of property was due to negligence by a state employee. However, even if it was an intentional deprivation of property, courts have repeatedly recognized that Alabama law provides adequate post-deprivation remedies for such losses of property caused by state officials through the Board of Adjustment and in an ordinary state-court tort action. *See Smith v. Governor for Ala.*, 562 F. App'x 806, 817-18 (11th Cir. 2014) (holding that the Alabama Board of Adjustments, Ala. Code § 41-9-60, *et seq.*, provides a meaningful post-deprivation

remedy through which a state inmate may seek relief for the loss or denial of property even though a recovery may not be the equivalent of a § 1983 action). Notably, the post-deprivation remedy does not need to be available to Plaintiff at the present time to determine whether the deprivation was with or without due process - it is only required that an adequate post-deprivation remedy be available when the deprivation occurred. *Parratt*, 451 U.S. at 543-44. Consequently, because an adequate post-deprivation remedy was available to Macon, the deprivation of his property was not without due process and there has been no constitutional violation, and this claim is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii). Because all federal claims alleged by Macon are due to be dismissed, the Court declines to exercise supplemental jurisdiction over any potential state law claims.

## IV. Conclusion

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that this action be **DISMISSED without prejudice** prior to service pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28

U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **14th** day of **September, 2026**.

**/s/ P. BRADLEY MURRAY**
**UNITED STATES MAGISTRATE JUDGE**